1   Frank E. Scherkenbach (CA #142549/scherkenbach@fr.com)
    FISH & RICHARDSON P.C.
2   One Marina Park Drive
    Boston, Massachusetts 02110-1878
3   Telephone: (617) 542-5070
    Facsimile:  (617) 542-8906
4
    Howard G. Pollack (CA #162897/pollack@fr.com)
5   Michael R. Headley (CA #220834/headley@fr.com)
    FISH & RICHARDSON P.C.
6   500 Arguello Street, Suite 500
    Redwood City, California 94063
7   Telephone:  (650) 839-5070
    Facsimile:  (650) 839-5071
8
    Attorneys for Plaintiff
9   POWER INTEGRATIONS, INC.

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                   (SAN JOSE DIVISION)

13

| | |
|---|---|
| 14  Power Integrations, Inc., | Case No. 5:16-cv-06371-BLF |
| 15              Plaintiff, | |
| 16  v. | **POWER INTEGRATIONS' MOTION TO SEVER AND TRANSFER CLAIMS RE: THE '876 PATENT** |
| 17  ON Semiconductor Corp. And Semiconductor Components Industries, LLC, | Date:          March 29, 2018 |
| 18              Defendants. | Time:          9:00 a.m. |
| 19  ON Semiconductor Corporation; and Semiconductor Components Industries, LLC, | Judge:         Honorable Beth Labson Freeman |
| 20 | Location:     Courtroom 3, 5ʰ Floor |
| 21              Plaintiffs, | Case No. 3:17-cv-03189 BLF |
| 22  v. | |
| 23  Power Integrations, Inc., | |
| 24              Defendant. | |

25

26

27

28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: Please take notice that, on March 29, 2018, at 9:00 a.m., or as soon thereafter as the matter may be heard, Plaintiff Power Integrations will move and hereby does move the Court to sever the Ninth and Tenth counts of the Third Amended Complaint of ON Semiconductor Corporation and Semiconductor Components Industries, LLC ("ON") and transfer these claims regarding Power Integrations' '876 patent (and Power Integrations' associated counterclaims) to the United States District Court for the District of Delaware.  In Delaware, the parties and the Court are already dealing with several cases directed to the same '876 patent and related technology, and the Court has already conducted claim construction proceedings and addressed validity challenges over the course of more than a decade of litigation regarding Power Integrations' patented "frequency jitter" technology.

## STATEMENT OF RELIEF

Power Integrations respectfully requests that the Court sever ON's claims for "declaratory judgement of non-infringement of the '876 patent" and "declaratory judgment of invalidity of the '876 patent" (and Power Integrations' associated counterclaims) and transfer them to the District of Delaware pursuant to 28 U.S.C. §1404(a).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

U.S. Patent No. 6,246,876 ("the '876 patent") has been litigated in the District of Delaware for over thirteen years, in multiple lawsuits.  Chief Judge Leonard Stark has developed extensive expertise in the '876 patent and Power Integrations' related frequency jitter technology by presiding over much of this litigation.  Indeed, Judge Stark has issued multiple claim constructions, heard numerous substantive motions, and presided over a ten day jury trial including claims on the '876 patent, with another trial involving that patent scheduled for later this year.  Moreover, the '876 and a related patent – PI's '851 patent – should be litigated together in Delaware, where both patents have already been asserted against ON.  Transferring the '876 claims to Delaware would also simplify this already complex case.

1   The convenience and fairness factors do not favor litigating the '876 claims in the Northern

2   District.  Both ON and Power Integrations are already litigating in the District of Delaware, and ON

3   has affirmatively sued Power Integrations in Delaware; thus, ON cannot claim to be inconvenienced

4   by litigating in that forum.  And with two other active cases between Power Integrations and ON's

5   wholly-owned Fairchild subsidiary directed to the '876 patent already in the District of Delaware,

6   there are a number of efficiencies to be gained by litigating the '876 patent claims in that District.

7   As such, ON's claims on the '876 patent should be severed and transferred to Delaware.

8   **II.    Factual Background**

9        **a.   ON Semiconductor and Fairchild Semiconductor Share a Corporate Family**

10   ON is the parent company of wholly-owned subsidiaries Fairchild Semiconductor

11   International, Inc, Fairchild Semiconductor Corporation, and Fairchild (Taiwan) Corporation

12   (collectively "Fairchild").  (Dkt. No. 1 (Compl.) at ¶ 4; Dkt. No. 54 (Answer) at ¶ 4.  ON and

13   Fairchild merged on September 19, 2016.  *Id*.

14        **b.   The Present Case Involves Infringement Claims on Fourteen Patents and the**
              **'876 Would Bring the Total to Fifteen**
15

16   The present action is a consolidation of Case No. 16-cv-06371-BLF, filed by Power

17   Integrations, and Case No. 17-cv-03189-BLF, initially filed by ON.  Power Integrations brought

18   affirmative claims for infringement of six patents: U.S. Patent Nos. 6,212,079, 8,115,457,

19   7,239,119, 7,538,553, 6,297,623, and 6,414,471.  ON's complaint claims infringement of eight

20   patents: U.S. Patent Nos. 6,333,624, 6,429,709, RE39,933, RE41,908, RE45,862, 6,597,221,

21   7,944,272, and 7,447,601.  ON's declaratory judgment claims regarding the '876 patent would bring

22   the total number of patents to fifteen.

23        **c.   ON and Power Integrations Are Engaged in Concurrent Litigation in the**
              **District of Delaware**
24

25   On March 9, 2017, ON filed a lawsuit against Power Integrations in the District of

26   Delaware, asserting infringement of six patents.  On September 29, 2017, Power Integrations

27   answered ON's Delaware complaint and asserted counterclaims for infringement of seven patents,

28

including the '876 patent and another two patents related to Power Integrations' frequency jitter

technology, U.S. Patent Nos. 6,229,366 ("the '366 patent) and 6,107,851 ("the '851 patent").

### d.  U.S. Patent Numbers 6,294,876, 6,107,851, and 6,229,366 All Relate to Frequency Jitter Technology

The '876 patent issued on June 19, 2001, and is entitled "Frequency jittering control for

varying the switching frequency of a power supply."  (Ex. A.)  The '851 patent issued on August

22, 2000, and is entitled "Offline converter with integrated soft start and frequency jitter."  (Ex. B.)

The '366 patent issued on May 8, 2001, and is entitled "Off-line converter with integrated soft start

and frequency jitter."  (Ex. C.)  All of these patents involve the "frequency jitter" technology, share

the same inventors, and were issued within ten months of each other.

### e.  The '876 and Related Patents have been Litigated in the District of Delaware for Over Thirteen Years

On October 20, 2004, Power Integrations first sued Fairchild in the District of Delaware

(*"Fairchild I"*) for infringement of four patents, including the '876 patent, the '851 patent, and the

'366 patent.  (Ex. D - Compl., No. 04-1371.)  Terms in these three patents were collectively

construed in a single order, including the terms "frequency jittering," "frequency variation circuit,"

and "frequency variation signal."  (Ex. E.)  Although this case was initially assigned to Judge

Joseph Farnan, it was reassigned to Judge Leonard Stark on August 17, 2010 when Judge Farnan

retired.  Since that time, Judge Stark has presided over the case, issuing final judgment on all three

patents, and is presently presiding over the case on remand from the Federal Circuit.

On May 23, 2008, Power Integrations filed another lawsuit against Fairchild in the District

of Delaware (*"Fairchild II"*) for further infringement of its '876 and '851 frequency jitter patents.  (

Ex F – Compl., No. 08).  Judge Stark ruled on summary judgement and *Daubert* motions relating to

the '876 and '851 patents, oversaw a ten-day jury trial adjudicating Fairchild's infringement of the

'876 and '851 patents in April 2012, and is presiding on remand, with a trial scheduled for

November of this year.

III.    **ARGUMENT**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. §1404(a).  The purpose of section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted).  Thus, a district court with proper venue may transfer an action provided that (1) the district to which transfer is sought is "one where the case might have been brought" and (2) "the convenience of parties and witnesses in the interest of justice favor transfer."  *Doe v. Uber Techs., Inc.*, No. 17-cv-00950-WHO, 2017 U.S. Dist. LEXIS 83462, at *7-8 (N.D. Cal. May 31, 2017) (quoting *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985)).[1]

As a threshold issue, "an action 'might have been brought' in a district [where] the action initially could have been commenced."  *Hatch v. Reliance Ins. Co.*, 758 F.2d at 414.  Once this threshold is satisfied, courts have recognized that "the interest of justice is the most important consideration" in transferring patent cases.  *Elecs. for Imaging, Inc. v. Tesseron, Ltd*, No. C 07-05534 CRB, 2008 U.S. Dist. LEXIS 10844, at *3 (N.D. Cal. Jan. 29, 2008).  Finally, district courts have broad discretion to determine whether to transfer "according to an individualized, case-by-case consideration of convenience and fairness."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

### a.    ON Could have Filed the '876 Claims in the District of Delaware

There is no question that the claims directed to the '876 patent could have been brought in Delaware.  "[T]he posture of the case at the time of filing in the transferor district is determinative of whether the action was one which 'might have been brought' in the proposed transferee district."  *A. J. Indus., Inc. v. United States Dist. Court for Cent. Dist.*, 503 F.2d 384, 386 (9th Cir. 1974) (citing *Hoffman v. Blaski*, 363 U.S. 334 (1960)).  An action "'might have been brought' so long as jurisdictional and venue requirements would have been satisfied."  *LML Holdings, Inc. v. Pac.*

---

[1]  In patent cases, motions to transfer are decided under the law of the appropriate regional circuit.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  In the Ninth Circuit, transfers of venue under §1404 are reviewed for abuse of direction.  *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

PI'S  MOT TO SEVER AND TRANSFER
Case No. 5:16-cv-06371-BLF

1   *Coast Distrib.*, No. 11-CV-06173 YGR, 2012 U.S. Dist. LEXIS 101325, at *6 (N.D. Cal. July 20,

2   2012).  Venue is proper in districts where a corporate defendant "resides." *See* 28 U.S.C. §§

3   1391(b), 1400(b).  Corporations reside in districts where they are "subject to the court's personal

4   jurisdiction."  *See* 28 U.S.C. § 1391(c).  Here, as entities incorporated under the laws of Delaware,

5   Power Integrations and ON are both subject to personal jurisdiction in Delaware.  *See Int'l Shoe Co.*

6   *v. Washington*, 326 U.S. 310, 316 (1945).  And both parties have filed suit in Delaware, and are

7   proceeding accordingly.  Thus, ON could have originally commenced an action on the '876 patent

8   in the District of Delaware.

9
          **b.   The Interest of Justice Strongly Favors Severance and Transfer of the '876**
10             **Claims to the District of Delaware, where the Court has a Working Familiarity**
               **with the Patents and Related Technology**

11         The interest of judicial economy strongly favors transferring the '876 claims to Delaware:

12   not only are Power Integrations and ON presently litigating the '876 patent in Delaware, but Power

13   Integrations and Fairchild have continually litigated the '876 patent in Delaware for over thirteen

14   years.  "[C]ourts have consistently held that judicial economy plays a paramount role in trying to

15   maintain an orderly, effective, administration of justice."  *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346

16   (Fed. Cir. 2010).  Therefore, "[c]onsideration of the interest of justice, which includes judicial

17   economy, may be determinative to a particular transfer motion, even if the convenience of the

18   parties and witnesses might call for a different result."  *Regents of Univ. of Cal. v. Eli Lilly & Co.*,

19   119 F.3d 1559, 1565 (Fed. Cir. 1997) (internal quotations and citations omitted).  Courts in the

20   Northern District of California have frequently found that "in highly technical cases …, judicial

21   economy favors transfer to a court that has a working familiarity with the background technology or

22   science."  *Eli Lilly & Co. v. Genentech, Inc.*, No. 13-CV-0919 YGR, 2013 U.S. Dist. LEXIS

23   114460, at *20 (N.D. Cal. Aug. 13, 2013) (hereinafter *Eli Lilly*).  "Patent cases involve highly

24   technical factual determinations, and to require different courts to conduct such an extensive inquiry

25   would be highly inefficient and could also lead to conflicting claim constructions."  *Glaxo Grp. Ltd.*

26   *v. Genentech, Inc.*, No. C 10-00675 JSW, 2010 U.S. Dist. LEXIS 46440, at *9 (N.D. Cal. Apr. 12,

27   2010).  Therefore, especially "where a judge is already familiar with the underlying facts and legal

28   issues," courts in the Northern District of California have consistently transferred patent cases in the

1   interest of judicial economy. *Integrated Glob. Concepts, Inc. v. J2 Glob., Inc.*, No. C-12-3434-

2   RMW, 2014 U.S. Dist. LEXIS 88258, at *7 (N.D. Cal. June 27, 2014); *see also, e.g., Bristol-Myers*

3   *Squibb Co. v. Genentech*, No. C 13-2045 SI, 2013 U.S. Dist. LEXIS 103836, at *13-14 (N.D. Cal.

4   July 23, 2013) (hereinafter *Bristol-Myers*); *Elecs. for Imaging, Inc.*, 2008 U.S. Dist. LEXIS 10844

5   at *3; *Alere Med., Inc. v. Health Hero Network, Inc.*, No. C 07-05054 CRB, 2007 U.S. Dist. LEXIS

6   93629, at *3 (N.D. Cal. Dec. 12, 2007). These cases also approve the severance and transfer of

7   particular claims. *See Xilinx, Inc. v. Invention, Inv. Fund I LP*, No. C-11-0671 SI, 2011 U.S. Dist.

8   LEXIS 81986, at *11-12 (N.D. Cal. Jul. 27, 2011).

9        *Eli Lilly & Company v. Genentech* and *Bristol-Myers Squibb v. Genentech* are two similar

10   declaratory judgement actions that were transferred by different judges in the Northern District of

11   California.[2] In the *Genentech* cases, plaintiffs filed declaratory judgment actions against

12   Genentech's 6,331,415 and 7,923,221 patents (collectively, "the Cabilly Patents"). *Eli Lilly*, 2013

13   U.S. Dist. LEXIS 114460, at *1-4; *Bristol-Myers*, 2013 U.S. Dist. LEXIS 103836, at *2-3. In each

14   case, Genentech moved for transfer to the Central District of California, where Senior District Judge

15   Pfaelzer had presided over cases involving the Cabilly Patents for the preceding nine years. *See,*

16   *e.g., Eli Lilly*, 2013 U.S. Dist. LEXIS 114460, at *3, 6; *Bristol-Myers*, 2013 U.S. Dist. LEXIS

17   103836, at *10-11. In each case, the court granted Genentech's motion to transfer "in the interest of

18   justice—in particular judicial efficiency and uniformity of claim construction." *Bristol-Myers*, 2013

19   U.S. Dist. LEXIS 103836 at *13; *see also Eli Lilly*, 2013 U.S. Dist. LEXIS 114460, at *18-19

20   (calling judicial efficiency a "central factor"). The courts reasoned that, "[t]ransferring this case

21   [would] allow Judge Pfaelzer to apply the expertise she [had] gained through presiding over

22   numerous lawsuits involving the Cabilly patents, including issuing multiple claim constructions and

23   hearing substantive arguments about invalidity." *Bristol-Myers*, 2013 U.S. Dist. LEXIS 103836, at

24   *14; *see also Eli Lilly*, 2013 U.S. Dist. LEXIS 114460, at *20 (noting that "Judge Pfaelzer has

25   presided over Cabilly-related litigation for ten years [and] issued dozens of substantive orders.").

26   Additionally, in *Bristol-Myers*, the court reasoned that "[a]lthough plaintiff argues that this case

27   involves new accused products and thus presents issues of first impression for any judge," transfer

28

---

[2]   *Eli Lilly & Company v. Genentech* was transferred by Judge Yvonne Gonzales Rogers. *Bristol-Myers Squibb v. Genentech* was transferred by Judge Susan Illstron.

PI'S MOT TO SEVER AND TRANSFER
Case No. 5:16-cv-06371-BLF

1    was warranted nonetheless because these new products infringed the Cabilly patents by "similar

2    methods." *Bristol-Myers*, 2013 U.S. Dist. LEXIS 103836, at *15.  In *Eli Lilly*, the court went

3    further to reason that "Judge Pfaelzer's experience with multiple products … makes her more, not

4    less prepared to oversee the instant litigation." *Eli Lilly*, 2013 U.S. Dist. LEXIS 114460, at *21.

5    On writ of mandamus, the Federal Circuit affirmed transfer of *Eli Lilly*, holding that a district

6    court's evaluation of judicial economy is given considerable deference.  *In re Eli Lilly & Co.*, 541 F.

7    App'x 993, 994-95 (Fed. Cir. 2013).

8         Given that the '876 claims involve technical issues involving frequency jitter, and given

9    Judge Stark and the District of Delaware's long-established expertise with the '876 patent and

10   related patents, the interests of justice—particularly judicial expertise, uniformity with parallel

11   litigation, and consistency with related patents—favor transfer even more than in the *Genentech*

12   cases.  The '876 patent has been litigated in the District of Delaware for over thirteen years, four

13   years longer than the series of Cabilly Patents were litigated in the Central District of California.

14   Judge Stark has developed extensive expertise by presiding over much of this litigation.  As in

15   *Genentech*, Judge Stark has already conducted claim construction proceedings and heard numerous

16   substantive motions regarding the '876 patent.  Additionally, and more compellingly, Judge Stark

17   presided over a ten day jury trial that actually litigated infringement of the '876 patent by similar

18   products and resulted in a final judgment on the merits, with another trial on the '876 patent

19   scheduled for November of this year.  Moreover, Judge Stark already adjudicated the issue of

20   validity of the '876 patent, having dealt with a validity challenge brought by ON's wholly-own

21   subsidiary—Fairchild Semiconductor.  Thus, just as judicial expertise supported transfer in

22   *Genentech*, the same benefit is present here to support the transfer of the '876 claims to Delaware.[3]

23

24

---

25   [3]    ON may point to another pending case between PI and Fairchild that involves the '876 patent
     (among others), which PI filed here in the Northern District when J. Chesney required the
26   parties to file a new lawsuit rather than add newly-identified products to an existing lawsuit in
     this District.  But that case was filed in California because of J. Chesney's experience with a
27   different patent she had handled in prior litigation (the '079 patent), and the case was stayed
     almost immediately, before any substantive work could be done, so Judge Chesney does not
28   have any expertise specific to the '876 patent.  As such, there is no benefit to maintaining the
     '876 patent in this case, whereas there are significant efficiencies to be realized if J. Stark
     presides over all of the active litigation regarding the '876 patent in Delaware.

1    Transferring the '876 claims to Delaware will also avoid discord with concurrent litigation.

2    The Supreme Court has recognized the inefficiencies of maintaining two separate litigations

3    involving overlapping issues. *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

4    Allowing disparate litigation raises the possibility of inconsistent rulings, but the Delaware court

5    has already construed the '876 patent and is familiar with the issues.  Thus, maintaining separate

6    '876 claims in the Northern District of California would present the risk of inconsistent treatment.

7    The factual overlap between the '876 patent and PI's other frequency jitter patents also

8    counsels in favor of transfer.  Power Integrations' '876, '851, and '366 patents involve similar

9    frequency jitter technology, share the same inventors, and were developed and prosecuted during

10   the same timeframe.  (*See* Ex. A-C.)  All three patents were collectively asserted in *Fairchild I*, the

11   '851 and '876 patents were collectively asserted in *Fairchild II*, and all three patents are being

12   collectively asserted in concurrent litigation with ON.  These related patents should be litigated

13   together.

14   Finally, transferring the '876 claims would simplify this case by removing an entire area of

15   unique technology—frequency jitter—from contention.  During the case management conferences,

16   the Court referred to this case as "unmanageable" in view of the number of patents and claims at

17   issue.  Transferring ON's '876 claims would only reduce the number of patents-at-issue by one, but

18   it would simplify the case significantly, as none of the other patents in this case involves frequency

19   jitter.  Thus, transferring the '876 claims to Delaware will both simplify this overly complex case

20   and consolidate related patents before a judge with a working familiarity of the technology.

21   **c.  The Convenience of Parties and Witnesses Favors Transfer**

22   Although there is concurrent litigation in California and Delaware, any witness whose

23   testimony relates solely to the '876 patent will benefit from transferring the declaratory judgement

24   claims since they would already be testifying about jitter technology in the Delaware case.  As an

25   initial matter, ON has filed suit in the District of Delaware, so it cannot suggest California is more

26   convent for ON or its people.  More significantly, along with judicial economy in technical cases,

27   "[t]he convenience of witnesses is said to be the most important factor in passing on a transfer

28   motion."  *CES Grp., LLC v. DMG Corp.*, No. 14-cv-02919-BLF, 2015 U.S. Dist. LEXIS 13436, at

*10-11 (N.D. Cal. Feb. 3, 2015) (quoting *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 89 F.R.D. 497, 501 (C.D. Cal. 1981)).  To the extent that any witness's testimony relates to the '876 patent alone, that witness will benefit from not having to testify at two separate trials directed to frequency jitter technology on opposite coasts.  *See Cluck v. IKON Office Sols., Inc.*, No. C 11-05027 JSW, 2012 U.S. Dist. LEXIS 64559, at *6 (N.D. Cal. May 8, 2012) ("Allowing the witnesses to appear once in a single venue is more convenient that requiring them to appear multiple times in multiple venues.").

### d.  On Balance, Other Convenience and Fairness Factors Favor Transfer

In this case, the other convenience and fairness considerations cannot overcome the compelling case for transfer.  District courts "weigh multiple factors in … determin[ing] whether transfers is appropriate in a particular case." *Jones*, 211 F.3d at 498.  In evaluating convenience and fairness, a "court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* at 498-99.

Relative to the interest of justice and convenience of witnesses, the convenience and fairness factors are less significant, but they too weigh in favor of transfer.  First and foremost, the Northern District of California is not ON's chosen forum; ON originally sued in Arizona and later filed suit in Delaware.  Second, ON is a Delaware corporation, and it has availed itself of the privileges and protections of Delaware law.[4]  And while Power Integrations has extensive contacts to the Northern District of California, courts give little weight to a non-movant's argument that the transferor district is more convenient to the transferring party.  *See Glaxo Grp. Ltd. v. Genentech, Inc.*, 2010 U.S. Dist. LEXIS 46440, at *12-13.  Both parties are engaged in simultaneous litigation in

---

[4]  "Having accepted the benefits of incorporation under the laws of the State of Delaware, a company should not be successful in arguing that litigation in Delaware is inconvenient, absent some showing of a unique or unexpected burden." *Sci. Telecomms., LLC v. Adtran, Inc.*, No. 15-647-SLR, 2016 U.S. Dist. LEXIS 55099, at *3 (D. Del. Apr. 25, 2016) (internal quotations and citations omitted)

1  Delaware.  And while both the District of Delaware and this Court are equally familiar with patent

2  law, Judge Stark is intimately familiar with the law as it applies to the asserted jitter patents

3  (including the '876 patent).  Therefore, ON cannot claim any significant benefit or convenience in

4  litigating one of twenty-seven patents-at-issue between the parties in California, but there are

5  obvious benefits in having Judge Stark preside over all of the parties' active litigation on related

6  technology.

7  **IV.      CONCLUSION**

8           For the forgoing reasons, in the interest of justice, Power Integrations respectfully requests

9  that this Court transfer the '876 claims to the District of Delaware.

10

11

12  Dated:  February 20, 2018                           FISH & RICHARDSON P.C.

13

14                                                           By:  */s/ Michael R. Headley*_____

15                                                                 Michael R. Headley

16                                                           Attorneys for Plaintiff
                                                             POWER INTEGRATIONS

17

18

19

20

21

22

23

24

25

26

27

28

PI'S  MOT TO SEVER AND TRANSFER
Case No. 5:16-cv-06371-BLF