# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| POWER INTEGRATIONS, INC., <br> Plaintiff, <br> v. <br> ON SEMICONDUCTOR CORP. AND SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, <br> Defendants. | Case No. 16-cv-06371-BLF <br><br> **ORDER DENYING POWER INTEGRATIONS, INC.'S MOTION TO SEVER AND TRANSFER CLAIMS REGARDING THE '876 PATENT** <br><br> [Re: ECF 101] |
| ON SEMICONDUCTOR CORP. AND SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, <br> Plaintiffs, <br> v. <br> POWER INTEGRATIONS, INC., <br> Defendant. | Case No. 17-cv-03189-BLF |

Before the Court is Power Integrations, Inc.'s ("PI") motion to sever and transfer claims regarding its U.S. Patent No. 6,249,876 ("the '876 patent"). Mot., ECF 101. Specifically, PI seeks to sever and transfer ON Semiconductor Corporation and Semiconductor Components Industries, LLC's (collectively, "ON") declaratory judgment claims on the '876 patent and PI's counterclaim on the '876 patent to the District of Delaware, where the parties are also litigating a patent infringement dispute. The Court heard argument on April 27, 2018. The parties were allowed to submit supplemental briefing after they participated in a hearing before the Honorable Leonard P. Stark at the District of Delaware. For the reasons stated on the record and set forth below, PI's motion to sever and transfer claims regarding the '876 patent is DENIED.

## I. BACKGROUND

### A. This Action

This action is a part of a complex patent infringement dispute between PI and ON. On

August 11, 2016, ON filed a patent infringement and declaratory judgment case against PI in the District of Arizona. That case includes a declaratory judgment claim on PI's '876 patent, and was transferred to this District and reassigned to the undersigned judge as Case No. 17-cv-03189-BLF. On November 1, 2016, PI filed Case No. 16-cv-06371-BLF in this District, alleging that ON infringes six patents owned by PI. The two cases, Case No. 16-cv-06371-BLF and Case No. 17-cv-03189-BLF, are consolidated.

On January 24, 2018, the Court denied without prejudice PI's motion to dismiss ON's claim for declaratory judgment of invalidity of the '876 patent. ECF 92. On February 20, 2018, PI filed an answer to ON's third amended complaint and included a counterclaim alleging infringement of the '876 patent. TAC, ECF 100. On the same day, PI filed the instant motion seeking to sever and transfer claims regarding the '876 patent to the District of Delaware.

**B.     The Delaware Action**

On March 9, 2017, ON filed a patent lawsuit against PI in the District of Delaware (the "2017 Delaware case"). On September 29, 2017, PI answered ON's Delaware complaint asserting counterclaims for infringement of seven patents including the '876 patent. Mot. 2–3. The '876 patent is entitled "Frequency jittering control for varying the switching frequency of a power supply." Ex. A to Headley Decl., ECF 101-2. PI also asserts counterclaims based on U.S. Patent Nos. 6,229,366 ("the '366 patent) and 6,107,851 ("the '851 patent"). Mot. 3. According to PI, the '876, '366, and '851 patents relate to "frequency jitter" technology. *Id.*

Thereafter, ON filed a motion to strike PI's counterclaim based on the '876 patent on the ground that it is barred by the first-to-file rule and duplicative of the declaratory judgment claim on the '876 patent in this Court. *See* Ex. H to Fulghum Decl., ECF 123-9. The Delaware court stayed its ruling on the motion to strike pending this Court's ruling on the instant motion. Ex. J to Fulghum Decl., ECF 123-11.

**II.     LEGAL STANDARD**

"While transfer motions are governed by regional circuit law, motions to sever are governed by Federal Circuit law." *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012) (internal citation omitted). "The decision to deny a motion to sever is committed to the discretion

of the district court." *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 938 (Fed. Cir. 2013) (citing *In re EMC*, 677 F.3d at 1355).

Federal Rule of Civil Procedure 21 provides that the "court may . . . sever any claim against a party." Fed. R. Civ. P. 21. "Because Rule 21 does not provide a standard for district courts to apply in deciding whether parties or claims are misjoined, [w]hen considering a motion to sever under Rule 21, courts have looked to Rule 20 for guidance." *Id.* (citing *In re EMC*, 677 F.3d at 1356) (internal quotation marks omitted) (alteration in original). Rule 20 allows joinder of defendants if: "(A) any right to relief . . . aris[es] out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "[T]hese requirements [are] necessary, but not sufficient, conditions for joinder." *In re Nintendo*, 544 F. App'x at 939 (citing *In re EMC*, 677 F.3d at 1355). As such, "'even if a plaintiff's claims arise out of the same transaction and there are questions of law and fact common to all defendants,' joinder may still be refused 'in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.'" *Id.* (citing *EMC*, 677 F.3d at 1360); *accord Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000).

As to discretionary transfers, a district court may do so in the interest of justice for the convenience of the parties and of the witnesses. 28 U.S.C. § 1404(a). In a case not involving a forum-selection clause, a district court considering a § 1404(a) motion "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). The parties' convenience and other private interests entail consideration of a number of factors including the plaintiff's choice of forum, the parties' contacts with the forum, the contacts relating to the plaintiff's claims in the chosen forum, the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)); *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir. 2000). "Public-interest factors may include 'the

3

administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* (quoting *Piper Aircraft,* 454 U.S. at 241 n.6) (alteration in original).

A transfer would not be appropriate if it "merely shift[s] rather than eliminate[s] the inconvenience." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986). The party seeking to transfer a case bears the burden of demonstrating that the balance of convenience and interests of justice factors "clearly favor transfer." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 781 (N.D. Cal. 2014).

## III. DISCUSSION

PI argues that the claims regarding the '876 patent should be severed and transferred to the District of Delaware in the interest of judicial economy. Mot. 5; Reply 2–3, ECF 127. PI contends that ON's wholly-owned subsidiaries Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation, and Fairchild (Taiwan) Corporation (collectively, "Fairchild") and PI have litigated the '876 patent in the Delaware court for over thirteen years. Mot. 2–3, 5. According to PI, Judge Stark in the District of Delaware has developed extensive expertise with the '876 patent while presiding over the litigation between PI and Fairchild. *Id.* at 7. In particular, PI asserts that Judge Stark has conducted claim construction proceedings and heard numerous substantive motions regarding the '876 patent. *Id.* Also, PI points out that Judge Stark presided over a ten-day jury trial that litigated the infringement of the '876 patent and has another trial scheduled on the '876 patent later this year. *Id.*

To support its position, PI discusses in detail *Eli Lilly & Co. v. Genentech, Inc.*, No. 13-CV-0919 YGR, 2013 WL 4396718 (N.D. Cal. Aug. 13, 2013) and *Bristol-Myers Squibb Co. v. Genentech*, No. C 13-2045 SI, 2013 WL 3829599 (N.D. Cal. July 23, 2013). Mot. 6–7. In those cases, the plaintiffs filed declaratory judgment actions against Genentech, Inc.'s ("Genentech") U.S. Patent Nos. 6,331,415 (the "Cabilly II" patent) and 7,923,221 (the "Cabilly III patent"). *Eli Lilly*, 2013 WL 4396718, at *1; *Bristol-Myers*, 2013 WL 3829599, at *1. Genentech moved to transfer those cases to the Central District of California, where Judge Pfaelzer had previously

4

presided over a number of cases that litigated the Cabilly patents. The courts in *Eli Lilly* and *Bristol-Myers* recognized Judge Pfaelzer's significant experience and familiarity with the Cabilly patents and granted Genentech's requests to transfer the cases. *See Eli Lilly*, 2013 WL 4396718, at *6; *Bristol-Myers*, 2013 WL 3829599, at *2–4. Like the Genentech cases, PI argues, the interests of justice, which includes judicial economy, warrants transferring the claims regarding the '876 patent to the District of Delaware given Judge Stark's expertise and the technical issues involving the '876 patent. Mot. 5–7.

However, the Genentech cases which PI relies on involved unique circumstances. In those cases, Judge Pfaelzer had presided over at least four actions centered on the Cabilly patents and "issued three claim construction orders, heard fourteen summary judgment motions, presided over nine hearings, issued twenty-five substantive orders, and reviewed over 800 docket entries." *Bristol-Myers*, 2013 WL 3829599, at *2 (citing *Human Genome Sciences, Inc. v. Genentech Inc., et al.*, No. 11–082–LPS, 2011 WL 2911797, at *10 (D. Del. July 18, 2011)). Judge Pfaezler also considered herself as "'a student of Cabilly II,' being very familiar with the prosecution history, including the interference and reexamination record." *Id.* (citing *Human Genome*, 2011 WL 2911797, at *10). And importantly, Judge Pfaezler expressly stated that she would be happy and was prepared to take cases from another district. *See id.* (citing *Human Genome*, 2011 WL 2911797, at *10). As such, Judge Pfaelzer's express statements regarding her expertise and willingness to preside over actions that were not before her made it clear that judicially economy would be substantially enhanced by transferring the Cabilly patent cases to Judge Pfaelzer.

Unlike the litigation involving the Cabilly patents, here there is no indication that Judge Stark expresses himself as a student of the '876 patent or is willing to take claims regarding the '876 patent that are not before him. When the parties inquired about his willingness to oversee the '876 patent claims in this action, Judge Stark made no comment and expressed "neutrality" on the issue. Ex. B to Fulghum Decl. in Supp. of Suppl. Reply (transcript for hearing before Judge Stark) 21:13–22, ECF 140-3. As such, even if Judge Stark has familiarity and long-standing experience with the '876 patent because he has presided over litigation between PI and Fairchild, PI has not shown that judicial efficiency will be so increased as in the Genentech cases. Moreover,

it is well known that the District of Delaware's docket has become increasingly congested after the Supreme Court's 2017 decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). In fact, the District of Delaware has considered docket congestion and its limited resources in evaluating the judicial economy of entertaining disputes at its court. *See, e.g.*, *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 227 (D. Del. 2017) ("This District is now reduced to two active judges, only increasing the number of cases on each judge's docket here. While visiting judges can assist, we also must manage our busy urban dockets and, as much as we may try, cannot fully mitigate the loss of experienced judges in this District while we await commissions for new district court judges."); *id.* (discussing that the District of Delaware has a higher docket congestion compared to the Northern District of California). Under these circumstances, the Court does not find that the consideration of judicial economy in light of Judge Stark's experience clearly warrants severing and transferring the claims regarding the '876 patent to the District of Delaware.

PI further argues that disallowing severance of the claims regarding the '876 patent would present the risk of rulings that are inconsistent with those of the Delaware court. Mot. 8. Specifically, PI asserts that the Delaware court has already construed the '876 patent. To be sure, uniformity of claim construction weighs in favor of having a single court oversee actions that litigate the same patent. *Bristol-Myers*, 2013 WL 3829599, at *4. But the desire to have a consistent claim construction is not an absolute ticket to transfer a case to another venue. *Cf. Finjan, Inc. v. Sophos Inc.*, No. 14-CV-01197-WHO, 2014 WL 2854490, at *7 (N.D. Cal. June 20, 2014) (denying motion to transfer patent action where the transferee court judge had construed one of the asserted patents at least seven years ago).[1] Such a position is belied by PI's own filing of cases that assert or have asserted the '876 patent in this District. *See Power Integrations, Inc. v. Fairchild Semiconductor Inc., et al.*, Case No. 15-cv-04854-MMC, Dkt. No. 30 (first amended complaint asserting the '876 patent); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, Case

---

[1] PI submitted Judge Stark's opinion regarding the claim construction of the '876 patent. Ex. H to Headley Decl. in Supp. of PI's Reply, ECF 127-3. That opinion is dated December 18, 2009 which is about eight years ago, *see id.*, similar to the seven year lapse in *Finjan*.

6

No. C 07-03137-WHA, Dkt. No. 1 (filed June 14, 2007) (complaint asserting the '876 patent), *voluntarily dismissed* on October 16, 2007.

Moreover, the Court finds that PI's concern regarding the uniformity of claim construction is not so substantial. This Court may consider claim construction orders issued in the District of Delaware and accord deference to those rulings.[2] *See Visto Corp. v. Sproqit Techs., Inc.*, 445 F. Supp. 2d 1104, 1108 (N.D. Cal. 2006). The Court also notes that PI previously stated that the Federal Circuit issued a precedential opinion construing one of the terms in the '876 patent. March 22, 2018 Hearing Tr. 8:7–10, ECF 131; *In re Power Integrations, Inc.*, 884 F.3d 1370, 1379 (Fed. Cir. Mar. 19, 2018). To the extent that the Federal Circuit's March 19, 2018 opinion is applicable to this case, both the District of Delaware and this Court must follow the appellate court's holding.

PI further argues that transferring the '876 patent claims would simplify this action by removing "frequency jitter" technology from contention and that the '876 patent should be litigated with other "frequency jitter patents" (i.e., the '851 and '366 patents) in the Delaware court. Mot. 8. ON counters that although the '851 and '366 patents are within the same patent family, the '876 patent is a member of a different patent family. Opp'n 6. Thus, ON contends, PI's argument that the '876 patent is "related" to the patents asserted in the 2017 Delaware case is only based on the patents' reference to the "jitter" subject matter. *Id.* On this basis, ON discounts PI's argument that emphasizes the relationship between the '876 patent and the '851 and '366 patents. *See id.*

The Court agrees with ON's arguments. While the '876 patent may be related to the '851 and '366 patents in a sense that they cover frequency jitter technology, the weight of that relation is not so great given the other patents asserted in this case. The fifteen patents asserted in this action, including the '876 patent, generally relate to power converters. Thus, the '876 patent is also related to other patents in this case in terms of the technical field. In fact, when PI sought to

---

[2] The Court does not determine whether the Delaware court's claim construction orders are binding to the parties or what level of deference may be accorded to those orders. That issue is not present in the instant motion.

7

transfer ON's case from the District of Arizona, it argued that most of the asserted patents[3] relate to the same technology. *See* Ex. A to Fulghum Decl. ("PI's Mot. to Transfer"), ECF 123-2. In other words, the technological similarity between the patents weighed in favor of transferring ON's case to this District. That same similarity now weighs against transferring the '876 patent to the Delaware court. Indeed, the Court does not find that severing and transferring only a single patent would meaningfully improve judicial efficiency. Such a transfer still leaves this Court to oversee litigation of fourteen patents in the same general technical field while the Delaware court which is burdened with limited resources receives an additional patent.

PI also argues that it would be prejudiced if the claims regarding the '876 patent are not severed and transferred. Reply 3–4. Specifically, PI contends that ON seeks to re-litigate the validity of the '876 patent and contravene claim constructions that were determined in previous Fairchild cases despite the fact that there has been adjudication on the merits by ON's Fairchild subsidiary. *Id.* at 3. Here, PI raises a valid concern. However, there has been no determination that ON is in privity with Fairchild. The Court is not aware that the Delaware court has ruled on this issue either. As such, regardless of where the '876 patent is litigated, the issue raised by PI will remain. Thus, the Court is unpersuaded by PI's argument.

In addition, PI has not shown that other § 1404(a) factors clearly favor transfer. PI argues that any witness whose testimony relates solely to the '876 patent will benefit from transferring the claims regarding the '876 patent on the ground that the witness would not be inconvenienced by having to testify at two separate trials on opposite coasts. Mot. 8–9. Here, PI has not identified any such witness with sufficient specificity. But "[t]he party seeking a transfer cannot rely on vague generalizations as to the convenience factors. The moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include." *Lax*, 65 F. Supp. 3d at 779 (quoting *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002)). Because PI has not identified any

---

[3] ON added new patents after its case was transferred from the District of Arizona to this District. *See* Second Am. Compl., ECF 50. Thus, PI's argument did not consider some patents that are currently being asserted.

8

specific witness in support of its argument, the Court is unable to determine whether the convenience of witnesses support severance and transfer.

The Court is also unpersuaded by PI's contention that other convenience and fairness factors weigh in favor of transfer. In particular, PI asserts that this District is not ON's chosen forum and that ON is a Delaware corporation which has availed itself of the protections of Delaware law. Mot. 9. But, while those factors indicate that Delaware would not necessarily be an inconvenient forum for ON, those factors do not support a showing that the balance of convenience "clearly favors transfer." *Lax*, 65 F. Supp. 3d at 776.

Moreover, as ON points out, this action and the parties' 2017 Delaware case each involve more than ten asserted patents. Opp'n 10. Transferring and adding the claims regarding the '876 patent to the 2017 Delaware case will not substantially reduce the complexity of the parties' litigation in two different Districts. The Court finds that the mere shift of some burden from one forum to another does not remove any inconvenience. Transfer is not appropriate if it would "merely shift rather than eliminate the inconvenience." *Decker Coal*, 805 F.2d at 843.

## IV. ORDER

For the foregoing reasons, PI has not sufficiently shown that consideration of judicial economy warrants severance of the claims regarding the '876 patent and that the § 1404(a) factors "clearly favor[] transfer" to the District of Delaware. *Lax*, 65 F. Supp. 3d at 776. The Court therefore DENIES PI's motion to sever and transfer claims regarding the '876 patent to the District of Delaware.

**IT IS SO ORDERED.**

Dated: June 5, 2018

BETH LABSON FREEMAN
United States District Judge

9