United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| POWER INTEGRATIONS, INC.,<br>Plaintiff,<br>v.<br>ON SEMICONDUCTOR CORPORATION, et al.,<br>Defendants. | Case No.16-cv-06371-BLF (VKD)<br><br>**ORDER RE: MOTION TO STRIKE AMENDED INFRINGEMENT CONTENTIONS**<br><br>Re: Dkt. No. 143 |

Plaintiff Power Integrations, Inc. ("PI") sues defendants ON Semiconductor Corp. and Semiconductor Components Industries, LLC (collectively, "ON") for patent infringement. ON's Motion to Strike PI's Amended Infringement Contentions (Dkt. No. 143) was referred to the undersigned judge. Dkt. No. 150. Having considered the parties' moving and responding papers, declarations, and exhibits as well as the parties' arguments at the hearing on July 24, 2018, for the reasons set forth below, the Court grants in part and denies in part ON's motion to strike.

**I.    BACKGROUND**

On September 22, 2017, pursuant to Patent Local Rule 3-1, PI served infringement contentions for six patents: U.S. Patent Nos. 6,212,079 ("the '079 patent"), 8,115,457 ("the '457 patent"), 7,239,119 ("the '119 patent"), 7,538,533 ("the '533 patent"), 6,297,623 ("the '623 patent"), and 6,414,471 ("the '471 patent"). Dkt. No. 143 at 1. ON filed a motion to strike three of the six claim charts in PI's original infringement contentions, arguing that they failed to comply with the Patent Local Rules in two respects. Dkt. No. 73; Dkt. No. 133 at 5:8-10. First, ON argued that PI's claim charts for the '079 and '457 patents fail to adequately describe how some of the charted ON products are representative of other uncharted products. Second, ON argued that

PI failed to explain how any of the accused products meets the "threshold level" limitation that appears in claim 19 of the '471 patent. Dkt. No. 73 at 3, 11.

On February 27, 2018, the Court granted ON's motion to strike and ordered PI to amend its representative contentions concerning the '079 and '457 patents and to elaborate on its contention as to the claimed "threshold level" limitation of the '471 patent. Dkt. No. 106.

PI served amended infringement contentions on March 29, 2018. ON now moves to strike the amended infringement contentions for three reasons. First, ON says that PI did not provide the necessary adequate analysis showing that the charted accused products are actually representative of uncharted accused products. Second, ON says that PI's amendments exceed the scope permitted in the Court's February 27, 2018 order. Third, ON says that PI served for the first time a claim chart asserting U.S. Patent No. 6,249,876 ("the '876 patent"), and that this chart also fails to provide the necessary "representative claim" analysis. Dkt. No. 148.

## II. LEGAL STANDARD

Patent Local Rule 3-1 requires a patentee to serve on all parties infringement contentions that include "[a] chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality . . . ." Patent L.R. 3-1(c). "[T]he degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-CV-01647-YGR(JSC), 2015 WL 335842, at *4 (N.D. Cal. 2015) (quoting *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010)). A party seeking to use representative claim charts bears "the burden of establishing that the products in the claim charts are representative of all accused products." *Vigilos LLC v. Sling Media Inc.*, No. C-11-04117 SBA (EDL), 2012 WL 9973147, at *5 (N.D. Cal. July 12, 2012). "[R]epresentative products may only be charted when supported by adequate analysis showing that the accused products share the same critical characteristics." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *5 (N.D. Cal. Jan. 9, 2017) (internal quotations removed). "[I]n order to rely on a claim that one accused product represents another for purposes of Rule 3-1(c), a patentee must do more than state as much. A patentee must state

2

*how.*" *Silicon Labs. Inc. v. Cresta Tech. Corp.*, No. 14-c-03227-PSG, 2015 WL 846679, at *2 (N.D. Cal. Feb. 25, 2015) (emphasis original).

Infringement contentions are not merely a vehicle for the disclosure of evidence; they force patentees to crystallize their theories of infringement and adhere to those theories after they have been disclosed. Patent L.R. 3-6 ("Amendment of the Infringement Contentions . . . may be made only by order of the Court upon a timely showing of good cause."); *Alberta Telecommc'ns Research Ctr. v. Rambus Inc.*, No. C06-02595 RMW (RS), 2007 WL 4170564, at *1 (N.D. Cal. Nov. 19, 2007) ("Patent Local Rule 3-1 requires parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.") (internal quotations and revisions omitted).

"Striking a patentee's infringement contentions is a severe sanction that should be used sparingly and only for good cause." *Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-CV-02863-EJD, 2015 WL 4647923, at *2 (N.D. Cal. 2015) (citation omitted). As a result, "motions to strike initial infringement [contentions] are frequently treated as motions to compel amendment of the infringement contentions." *Geovector*, 2017 WL 76950 at *7.

## III. DISCUSSION

### A. Representative Products for the '457 and '079 Patents

#### 1. '457 patent

PI's amended '457 patent claim chart alleges that the NCP1246 product is representative of more than a dozen other uncharted products based on two testing reports. Dkt. No. 143-4 at 1–2. ON argues that PI fails to show that the NCP1246 product is representative of the uncharted NCP1240G and NCP1249 products.

#### a. NCP1240G

ON points out that the NCP1240G product is not included in the testing reports on which PI relies, and that this accused product is not discussed in the '457 patent claim chart at all. Dkt. No. 143 at 4–5. PI responds that the charted NCP1246 product and the uncharted

NCP1240/NCP1240G products[1] share nearly identical schematics and datasheets. Dkt. No. 148 at 4. PI supports this argument with an attorney declaration that contains specific citations to the schematics and datasheets for the NCP1246 product, on the one hand, and the NCP1240/NCP1240G products, on the other hand, showing where PI contends each limitation of the asserted claims may be found in the accused products. Dkt. No. 147-1 ¶¶ 6. Those citations are *not* included in PI's amended contentions.

The Court finds that Patent Local Rule 3-1 requires more clarity and specificity than PI has provided in its current contentions. PI must amend its contentions to include the citations to the specific portions of the schematics and/or datasheets for the NCP1240/NCP1240G products that show where each limitation may be found, or it must map relevant portions of the schematics and/or datasheets for the NCP1240/NCP1240G products to the already-charted, representative NCP1246 product.

### b. NCP1249

ON argues that PI has not shown that the NCP1246 product is representative of the uncharted NCP1249 product. Specifically, ON notes differences between the NCP1246 and NCP1249 products that it claims are important for evaluating whether PI adequately explains how the NCP1246 product is or is not representative of the NCP1249 for purposes of infringement. First, ON points out that where the NCP1246 product uses one pin to provide a discharge path for the X-Capacitors, the NCP1249 product uses two pins. Second, the two products discharge their capacitors to a different voltage. Dkt. No. 143-4 at 5–6, 18–19, 31–32.

PI responds that the differences between the NCP1246 product and the NCP1249 product are not material to the claims, and furthermore, that where the NCP1249 product differs from the NCP1246 product, PI already provides a separate explanation for why the NCP1249 product meets a particular limitation. Dkt. No. 148 at 5.

At the hearing on the motion to strike, ON elaborated on its contention that one pin versus

---

[1] The parties do not dispute that the NCP1240 and NCP1240G are equivalent for purposes of assessing infringement. Dkt. No. 173 at 6:6-10.

4

two pins is a material difference for the purposes of infringement. For example, claim 1[2] of the '457 patent recites a specific structure: "a control circuit coupled to an input of a power converter, the control circuit coupled to detect whether an electrical energy source is coupled to an input of the power converter." Dkt. No. 143-4 at 2–6. ON contends that, with respect to the two-pin NCP1249 product, PI's contentions do not identify the claimed circuit, which pin is coupled to that circuit, or how that circuit detects an electrical energy source. Dkt. No. 173 at 8:5-16. As explained below, a close examination of PI's contentions on these claim limitations supports ON's view.

PI's amended infringement contentions indicate that the NCP1249 product has one pin for detecting the coupling of the AC input voltage ("X2") and a second pin that is a separate high voltage terminal ("HV") for providing both startup current and a discharge path for the X-Capacitors. Dkt. No. 143-4 at 5. The NCP1246 products uses one pin, a single terminal HV, to accomplish the same functions as the NCP1249 product's two pins. *Id.* at 4. PI asserted at the hearing that its contentions do, in fact, state which of the two pins are alleged to accomplish what is claimed in claim 1: the "X2" pin detects the coupling of the AC input voltage and is thus "coupled to an input of a power converter," and the "HV" pin "provid[es] both startup current and a discharge path for the X-Capacitors" and thus is "coupled to detect whether an electrical energy source is coupled to an input of the power converter." Dkt. No. 173 at 43:1–44:16.

A comparison of PI's disclosures in its contentions for this limitation, however, shows that the level of detail provided for the NCP1249 product does not match the level of detail provided for the NCP1246 product. PI's disclosure for the NCP1246 is quite lengthy:

> A power supply utilizing the NCP1246, such as the power supply
> shown in NCP1246 datasheet Fig. 1, includes a control circuit
> coupled to an input of a power converter, the control circuit coupled
> to detect whether an electrical energy source is coupled to an input

---

[2] The relevant claim limitations are found in claims 1 and 29 of the '457 patent, which recite, respectively, "a control circuit coupled to an input of a power converter, the control circuit coupled to detect whether an electrical energy source is coupled to an input of the power converter," and "a control circuit coupled to an input of a power converter, the control circuit coupled to sense whether an ac voltage source is coupled across input terminals of the input of the power converter." Dkt. No. 143-4 at 2–6, 27–32.

5

> of the power converter. *See, e.g.*, NCP1246 datasheet
> [ONSemi_2016CA0001403] at 1 ("This device contains a special
> HV detector which detect the application unplug from the AC input
> line and triggers the X2 discharge current."); 20 ("There is used a
> dedicated structure called ac line unplug detector inside the X2
> capacitor discharge control circuitry. See the Figure 50 for the
> block diagram for this structure and Figures 51, 52, 53 and 54 for
> the timing diagrams. The basic idea of ac line unplug detector lies
> in comparison of the direct sample of the high voltage obtained via
> the high voltage sensing structure with the delayed sample of the
> high voltage.") The NCP1246 requires an input of a power
> converter in order to have any practical use and, accordingly, there
> are no intended uses of the NCP1246 that would not satisfy this
> limitation.

Dkt. No. 142-4 at 3–4. This disclosure is accompanied by a diagram of a flyback converter application using the NCP1246 product, with the power supply outlet and capacitance denoted, outlined, and highlighted. *Id.* at 4. In contrast, PI's disclosure for the NCP1249 product simply states:

> This claim element does not define how the input detection must
> occur, and part-to-part variances are not meaningful with regard to
> implementing the claim. For example, the NCP1246 uses a single
> terminal ("HV") to both detect the coupling of the AC input voltage,
> to provide startup current, and to provide a discharge path for the X-
> Capacitors. . . . The NCP1249 uses two separate pins, one to detect
> the coupling of the AC input voltage ("X2") and a separate high
> voltage terminal ("HV") for providing both startup current and a
> discharge path for the X-Capacitors. . . . Because the claim is not
> specific as to how the detection must be accomplished, it is not
> necessary that it be accomplished with the same pin as is used for
> providing startup current and X-Capacitor discharge.

*Id.* at 4–6. This disclosure is accompanied by two diagrams excerpted from the NCP1249 datasheet, with one diagram annotated with circles around portions of the diagram but no explanatory text. *Id.* Rather than explain how the accused elements of the NCP1246 product correspond to the accused elements of the NCP1249 product, PI's contentions simply assert that the differences between the two is irrelevant for the purposes of the claim language.

Because the accused features of the charted NCP1246 product and the accused features of the NCP1249 product are not the same, PI may not rely on a general assertion that the NCP1246 product is representative of the NCP1249 product, coupled with an insufficiently specific

contention of which features in the NCP1249 product meet the limitations of the asserted claims. *See Bender v. Freescale Semiconductor, Inc.*, No. C 09-1156 PHJ (MEJ), 2014 WL 1689465, at *3 (N.D. Cal. Apr. 26, 2010) (Patent Local Rule 3-1 requires a plaintiff relying on representative products "to articulate how the accused products share the same, or substantially the same, infringing circuitry with any other product or with the . . . 'representative' products"). Because PI has not identified the specific circuits or components in the NCP1249 product that meet all the limitations of the '457 patent, it must provide amended contentions with the specificity required by Patent Local Rule 3-1.

### 2. '079 patent

With respect to the '079 patent, PI relies on three representative products for its contentions as follows: (1) the NCP1246 product is representative of the uncharted NCP1244 and NCP1247 products; (2) the NCP1234 product is representative of the uncharted NCP1236, NCP1237, NCP1238, NCP1239, NCP1240, NCP1240G, NCP1248, NCP1249, NCP1250, NCP1251, NCP1253, NCP1254, NCP1255, NCP1256, NCP1288, and NCP12510 products; and (3) the NCP107x product is representative of the uncharted NCP1124, NCP1126, and NCP1129 products, and numerous products of the NCP106x series. ON argues that for these three representative products, PI either provides no evidence that they are representative or insufficient evidence to put ON on notice of which circuitry is accused.

#### a. NCP1246

ON argues that the extent of PI's "representative product" analysis is limited to the general statement that "the representative nature of the products is confirmed by the datasheets and other available documentation." Dkt. No. 143 at 5–6. PI responds that it cited to the schematics for the NCP1246, NCP1244, and NCP1247 products, and that even though portions of the schematics that ON produced to PI are illegible, it is still apparent from those schematics that the accused products share substantially the same accused circuitry. Dkt. No. 148 at 6.

PI's citations to the schematics in its infringement contentions appear to encompass the entirety of each document; PI does not give specific citations to the portions of the schematics for the uncharted products where the claimed limitations are found. PI's infringement contentions

also do not identify which portions of circuitry in the NCP1244 and NCP1247 products correspond to the charted circuits and components of the NCP1246 product. *Id.* The infringement contentions provide insufficient notice to ON of how the NCP1244 and NCP1247 products infringe the asserted claims of the '079 patent.

PI provides more specific citations to the schematics for the accused products in its opposition to ON's motion to strike, and at the hearing, ON acknowledged that the disclosure contained in PI's brief would be sufficient to meet the requirements of Patent Local Rule 3-1. *See* Dkt. No. 173 at 14:24–15:5. Accordingly, PI must provide amended contentions that specifically identify the accused features in the NCP1244 and NCP1247 products, as it did in its opposition papers.

### b. NCP1234

ON makes essentially the same arguments with respect to PI's contentions that rely on the NCP1234 product as representative of the NCP1249, NCP1254, NCP1250, NCP1251, NCP1253, NCP1256, and NCP12510 products. However, PI's representative contentions for these products are more specific than for the NCP1244 and NCP1247 products described above. Here, PI provides specific citations to portions of circuitry in the schematics that indicate the NCP1234 product is representative of the NCP1249, NCP1254, NCP1250, NCP1251, NCP1253, NCP1256, and NCP12510 products. Dkt. No. 142-6 at 19, 28. ON objects that is "has no way of knowing which particular circuit elements are being accused" from PI's string citation, Dkt. No. 143 at 6–7, but each citation in PI's chart for the NCP1249, NCP1254, NCP1250, NCP1251, NCP1253, NCP1256, and NCP12510 products includes a parenthetical that indicates which block from the uncharted products is identified as similar to the block identified for the NCP1234 product. As a general matter, this disclosure is sufficient to provide notice, on a representative basis, of what portions of the uncharted products meet the limitations of the asserted claims of the '079 patent.

At the hearing, ON pointed out that one of the difficulties with PI's representative infringement contentions for these products is that PI uses the signals in the NCP1234 product as a proxy to identify the claimed control circuit. Dkt. No. 173 at 15:5-14, 17:11-18; 35:24–36:15. For example, for the charted NCP1234 product, PI contends that the "control circuit coupled to a

third terminal and the power switch, the third terminal to be coupled to an output of the power supply, the control circuit coupled to generate a feedback signal responsive to the output of the power supply" limitation is met by "███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████.'" Dkt. No. 143-7 at 16. However, ON says that because the "FB_in_div" and "CSref" signals are not used in the NCP1249, NCP1254, NCP1250, NCP1251, NCP1253, NCP1256, and NCP12510 products, PI's specific citations to schematics are not sufficient to identify by way of analogy where the claimed circuit may be found in the uncharted products. Dkt. No. 173 at 35:24 –37:21. This argument was not made in ON's motion papers, and because the record before the Court does not include all of the schematics referenced in PI's contentions, the Court is not able to assess the significance of the alleged ambiguity. The Court notes, however, that if ON is correct that the accused circuitry is identified by reference to particular signals in the charted product, and those signals do not appear in the cited portion of the schematics for the uncharted products, PI runs the risk that the Court will find that the claimed limitation is not, in fact, found in the uncharted products. PI should not expect to be able to reserve a more specific identification for expert disclosures, which are not due to be served until later in the case, particularly when it knows at this time which circuitry it means to accuse. *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014) ("Expert reports may not introduce theories not set forth in the infringement contentions."); *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099-JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) ("[A] party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions."). If PI does not wish to take this risk, it should carefully consider the objections on this point that ON raised at the hearing, and it may amend its contentions to address these objections.

---

[3] The Court assumes PI meant NCP1234 instead of NCP107x. In its amendments, PI should correct this error.

9

### c. NCP107x

ON argues that PI does not adequately explain how the NCP107x product is representative of the uncharted NCP106x and NCP112x products. With respect to the NCP106x product, ON acknowledges that PI provides citations to the schematics for both the NCP107x and NCP106x products, but argues that PI does not present any analysis showing how differences between the two products do or do not affect the accused functionality. Dkt. No. 143 at 7.

PI's infringement contentions identify the specific circuit blocks that it says are substantially the same in the NCP107x product and in the NCP106x product. Dkt. 142-6 at 9. As noted above, this disclosure generally is sufficient to provide notice, on a representative basis, of which portions of the uncharted NCP106x product meet the limitations of the asserted claims of the '079 patent.

ON again objects that, because PI uses the signals in the NCP107x product as a proxy to identify where the claimed circuitry may be found in the accused product, its specific citations to the schematics of the uncharted NCP106x product are insufficient in those instances where the uncharted product uses different signals. Dkt. No. 143 at 7. The Court is not able to assess the significance of the alleged ambiguity on the record before it. If, however, the accused circuitry is identified by reference to particular signals in the charted product and those signals do not appear in the cited portion of the schematics for the uncharted products, PI runs the risk that the Court will find that claimed limitation is not, in fact, found in the uncharted products. As discussed above, PI should not expect to remedy this omission in its expert disclosures.

With respect to the NCP112x product, PI's contentions cite to a datasheet that it says demonstrates that the NCP107x product is representative of the NCP112x product. ON says the datasheet figures and the NCP107x schematic figures differ in meaningful ways such that it is not possible to reliably determine which portions of the charted product correspond to portions of the uncharted product. *Id.* In opposing the motion to strike, PI disputes this characterization, but it does not describe (as it did for other uncharted products, discussed above) how the NCP107x product compares to the NCP112x product.

In addition, ON argues that the NCP107x product cannot be representative of the

NCP112x product because the NCP107x product uses a current-based feedback signal and the NCP112x product uses a voltage-based feedback signal. The parties dispute whether this is a meaningful difference for purposes of infringement. The claim limitation at issue requires "a control circuit coupled to a third terminal and the power switch, the third terminal to be coupled to an output of power supply, the control circuit coupled to generate a feedback signal responsive to the output of the power supply . . . ." Dkt. No. 143-7 at 8 (claim 31). While the claim limitation does not say what form the feedback signal must take, ON argues that because voltage-based feedback and current-based feedback implicate different circuitry, the NCP107x product cannot adequately represent the NCP112x product with respect to the claimed "control circuit coupled to generate a feedback signal responsive to the output of the power supply." Dkt. No. 173 at 17:16–25:20. In particular, ON contends that, given the differences between the products, PI's contentions for the NCP112x product do not disclose the requisite coupling for each component and do not identify the control circuit coupled to the output of the power supply. *Id.* at 19:23–20:18, 22:2–23:3.

The record before the Court does not include the schematics referenced in PI's contentions, and so the Court is not able to determine, as a general matter, whether the figures in the NCP107x schematics do or do not correspond to the figures in the NCP112x datasheet. If, however, PI is now in a position to rely on schematics for the NCP112x instead of a datasheet, it may wish to amend its charts to include specific citations to those schematics, as it did for the NCP106x product. With respect to the parties' dispute about disclosure relating to the "feedback signal" limitation of claim 31 of the '079 patent, if circuitry associated with the current-based signal of the NCP107x product differs from the circuitry associated with the voltage-based NCP112x product, PI again runs the risk that the Court will find that claimed limitation is not, in fact, found in the uncharted product. If PI does not wish to take this risk, it should carefully consider ON's objections on this point, and it may amend its contentions to address these objections.

## B. Representative Products for the '876 Patent

PI's infringement contentions for the '876 patent allege that: (1) the NCP107x product is representative of the NCP1060, NCP1063, NCP1237/38, NCP1239, NCP1288, and NCP12510

11

products; and (2) the NCP1234 product is representative of the NCP1124/26/29, NCP1236, NCP1240/40G, NCP1244, NCP1246, NCP1247, NCP1248, NCP1249, NCP1250, NCP1251, NCP1252, NCP1253, NCP1254, and NCP1255 products. Dkt. No. 131. ON argues, as it did for PI's other contentions, that PI fails to show how the two charted products are representative of the uncharted products.

### 1. NCP107x

ON argues that for the NCP1237/8, NCP1239, and NCP1288 products, PI recycles the "confirmed by datasheets and other available documentation" language the Court has already found insufficient. PI responds that the uncharted products for which the NCP107x product is representative all share a common datasheet and common schematics. Dkt. No. 142-8 at 1. As support, PI provides specific citations to the datasheets and schematics, identifying specific blocks in the circuitry, for the NCP1060, NCP1063, and NCP12510 products in its contentions. *Id.* at 3, 6–7, 10, 12–13, 17, 19–24, 25–26, 27, 31, 35. However, PI does not provide similar, specific citations for the NCP1237/38, NCP1239, and NCP1288 products.

PI's representative contentions are sufficient as to the NCP1060, NCP1063, and NCP12510 products, but they are not sufficient as to the NCP 1237/38, NCP1239, and NCP1288 products. PI must amend its contentions to include the citations to the specific portions of the schematics and/or datasheets for the NCP 1237/38, NCP1239, and NCP1288 products that show where each limitation may be found, or must map relevant portions of the schematics and/or datasheets for the NCP1237/38, NCP1239, and NCP1288 products to the already-charted, representative NCP107x product.

### 2. NCP1234

ON makes the same arguments against PI's reliance on the NCP1234 product as representative of the NCP1124/26/29, NCP1236, NCP1240/40G, NCP1244, NCP1246, NCP1247, NCP1248, NCP1249, NCP1250, NCP1251, NCP1252, NCP1253, NCP1254, NC1255 and NCP1256 products. PI provides specific citations for the NCP1249, NCP1250, NCP1251, NCP1253, NCP1254, and NCP1256 products. Dkt. No. 142-8 at 6–7, 8–10, 12–13, 19–20. PI does not provide specific citations for the NCP1124/26/29, NCP1236, NCP1240/40G, NCP1244,

NCP1246, NCP1247, NCP1248, NCP1252, and NC1255[4] products. Dkt. No. 152 at 4.

PI's representative contentions are sufficient as to NCP1249, NCP1250, NCP1251, NCP1253, NCP1254, and NCP1256 products, but they are not sufficient as to the NCP1124/26/29, NCP1236, NCP1240/40G, NCP1244, NCP1246, NCP1247, NCP1248, NCP1252, and NC1255 products. PI must amend its contentions to include citations to the specific portions of the schematics and/or datasheets for the latter set of products that show where each limitation may be found, or must map relevant portions of the schematics and/or datasheets for the those products to the already-charted, representative NCP1234 product.

### C. PI's Unauthorized Amendments

ON argues that PI's amended infringement contentions are also improper because they exceed the scope of the Court's February 27, 2018 order. Specifically, ON contends that: (1) PI's amendments to the charts for the '623, '533, and '119 patents were improper because the Court did not explicitly permit those amendments and PI did not seek leave to amend; (2) PI added a new contributory infringement theory for the '079, '457, '119, '533, '623, and '471 patents; and (3) PI changed the conception date for the '471 and '623 patents from October 28, 1997 to October 9, 1997, which ON asserts was done only after ON's invalidity contentions were served in an effort to swear behind invalidating prior art.

#### 1. Amendments to the contentions for the '623, '533, and '119 patents

On March 29, 2018, PI amended its infringement contentions for the '623, '533 and '119 patents by adding additional citations to product schematics. ON objects that these amendments were made without leave of Court.

ON's previous motion to strike sought amendment of the contentions relating to the '457, '079, and '471 patents. The contentions for the '623, '533, and '119 patents were not discussed at the February 27, 2018 hearing. On the one hand, PI's amendments to the contentions for the '623, '533, and '119 patents were not expressly permitted in the Court's previous order, and PI did not

---

[4] The preamble identifies the NCP1255 product, but the body of the contentions discusses the NCP1256 product. Dkt. No. 142-8 at 1. It is unclear to the Court whether the correct product is the NCP1255 or NCP1256.

13

seek leave of Court to amend. On the other hand, ON did not previously object to the charts for the '623, '533, and '119 patents, and PI asserts, without contradiction, that the amendments it made do not alter its infringement theories. Dkt. No. 143 at 8; Dkt. No. 173 at 26:8–28:15, 59:12–60:20. ON claims that it is prejudiced by the late disclosure of these citations because it has been litigating without them, and it must now investigate the additional citations PI provides. *See* Dkt. No. 143 at 9; Dkt. No. 173 at 28:5-11, 29:1–30:9.

While PI should have sought leave to make these amendments pursuant to Patent Local Rule 3-6, the Court will not strike the amended contentions, as they appear to provide more disclosure regarding the specific contentions on which ON relies and do not reflect a change in PI's theories of infringement.

### 2. Contributory infringement

On March 29, 2018, PI amended its infringement contentions for the '079, '457, '119, '533, '623, and '471 patents by adding allegations that ON "contributed to infringement of the patents-in-suit" and that ON had knowledge that the "accused functionality of the products is default functionality and that the products thereby have no substantial non-infringing uses." Dkt. No. 143 at 9. ON objects that these amendments were made without leave of Court and that they add a new, previously undisclosed theory of infringement. *Id.* ("PI added an entirely new allegation of contributory infringement . . . ."); Dkt. No. 173 at 28:16.

PI states that it pled contributory infringement allegations in its complaint for all patents (Dkt. No. 148 at 10), and that assertions of contributory infringement were unintentionally omitted from its infringement contentions for the '079, '457, '119, '533, '623, and '471 patents. It concedes that it did not seek leave of Court for the amendments, but argues that because PI asserted contributory infringement across all patents in the cover pleading to its amended infringement contentions (Dkt. No. 143-8 at 7–10), ON has been on notice since the filing of the complaint that PI was asserting contributory infringement for each patent. ON conceded at the hearing that it has not been prejudiced by these amendments. Dkt. No. 173 at 30:8-9.

While PI should have sought leave to make these amendments pursuant to Patent Local Rule 3-6, the Court will not strike the new contentions of contributory infringement, given PI's

14

representation that their omission was inadvertent and ON's concession that it would suffer no prejudice from the amendments.

### 3. Conception dates

On March 29, 2018, PI amended its contentions for the '471 and '623 patents by changing the asserted conception date from October 28, 1997 to October 9, 1997. Dkt. No. 143-8 at 11. ON objects that PI did not seek leave of Court for this amendment and that the amendment is prejudicial to ON, as it impacts the relevant date for purposes of ON's invalidity contentions, which had already been served. Dkt. No. 143 at 9.

In opposing ON's motion to strike, PI explains the change in the dates of conception for the inventions claimed in the '471 and '623 patents by saying only that it "dug deeper and found additional evidence that moved the date by 19 days." Dkt. No. 148 at 10. Not only did PI fail to seek leave of Court for this amendment, but also this explanation does not satisfy the requirement of "good cause" that Patent Local Rule 3-6 demands for amendment of contentions.

At the hearing, PI's counsel explained that the amendment was the result of counsel's closer examination of the same documents PI had earlier identified in its infringement contentions. Counsel says he did not appreciate that one of those documents bore a date that was earlier than the date PI originally asserted as the date of conception. Dkt. No. 173 at 61:11–63:13. ON did not have an opportunity to brief its response to this explanation because PI did not provide it in its opposition papers.

Given the significance of the amendment with respect to the potential impact on ON's invalidity contentions,[5] and the inadequate explanation for why the amendment was made without

---

[5] The Court appreciates that ON's search for prior was not limited to prior art between October 28, 1997 (the original conception date) and October 9, 1997 (the new, earlier conception date). However, a patentee's contentions about the relevant conception or priority date are among the disclosures that should occur before the accused infringer is required to research, prepare, and disclose invalidity contentions. *Compare* Patent L.R. 3-1(f) (requiring disclosure of priority date for any patent claiming priority to an earlier application) *and* Patent L.R. 3-2(b) (requiring plaintiff to produce "all documents evidencing the conception . . . of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3-1(f), whichever is earlier") *with* Patent L.R. 3-3 (requiring a defendant to serve invalidity contentions not later than 45 days after the plaintiff's infringement contentions are served on the defendant)**.**

15

leave, the Court strikes PI's amended contentions with respect to the conception dates for the inventions claimed in the '471 and '623 patents. If PI wishes to make this amendment, it must first confer with counsel for ON, after which PI may file a motion for leave to amend that comports with the requirements of Patent Local Rule 3-6.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART ON's motion to strike and ORDERS PI to serve amended infringement contentions, as follows:

1. '457 patent
   a. PI must amend its contentions for the NCP1240/NCP1240G products to include citations to the specific portions of the schematics and/or datasheets for the NCP1240/NCP1240G products that show where each limitation may be found, or it must map relevant portions of the schematics and/or datasheets for the NCP1240/NCP1240G products to the already-charted, representative NCP1246 product.
   b. PI must amend its contentions for the NCP1249 product to identify the specific circuits or components that meet all the limitations of the '457 patent.
2. '079 patent
   a. PI must amend its contentions for the NCP1244 and NCP1247 products to identify the accused features.
3. '876 patent
   a. PI must amend its contentions for the NCP1237/38, NCP1239, and NCP1288 products to include citations to the specific portions of the schematics and/or datasheets for the NCP1237/38, NCP1239, and NCP1288 products that show where each limitation may be found, or it must map relevant portions of the schematics and/or datasheets for the NCP1237/38, NCP1239, and NCP1288 products to the already-charted, representative NCP107x product.
   b. PI must amend its contentions for the NCP1124/26/29, NCP1236, NCP1240/40G, NCP1244, NCP1246, NCP1247, NCP1248, NCP1252, and

NC1255 products to include citations to the specific portions of the schematics and/or datasheets for the NCP1124/26/29, NCP1236, NCP1240/40G, NCP1244, NCP1246, NCP1247, NCP1248, NCP1252, and NC1255 products that show where each limitation may be found, or it must map relevant portions of the schematics and/or datasheets for the NCP1124/26/29, NCP1236, NCP1240/40G, NCP1244, NCP1246, NCP1247, NCP1248, NCP1252, and NC1255 products to the already-charted, representative NCP1234 product.

Additionally, PI may, at its election, further amend its contentions as follows:

4. '079 patent
   a. PI may amend its contentions for the NCP1234 product as representative of the NCP1249, NCP1254, NCP1250, NCP1251, NCP1253, NCP1256, and NCP12510 products to further identify the accused features, consistent with the Court's direction above.
   b. PI may amend its contentions for the NCP107x product as representative of the NCP106x and NCP112x products to further identify the accused features, consistent with the Court's direction above and to include specific citations to schematics.

PI must serve its second amended infringement contentions by **September 11, 2018**. Other than the amendments listed above, no other amendments may be made without leave of Court.

The Court STRIKES PI's amended contentions with respect to the conception dates for the '471 and '623 patents. PI may file a motion for leave to amend that comports with the requirements of Patent Local Rule 3-6, after first conferring with counsel for ON about the proposed amendments.

**IT IS SO ORDERED.**

Dated: August 20, 2018

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

17